**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| NATHAN SMITH,<br><br>Plaintiff,<br><br>v.<br><br>BTRS HOLDINGS INC., FLINT LANE, ROBERT FARRELL, MATTHEW HARRIS, CLARE HART, LAWRENCE IRVING, JOHN MURRAY, and JULI SPOTTISWOOD,<br><br>Defendants. | Case No. _____________<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>JURY TRIAL DEMANDED |

Plaintiff Nathan Smith ("Plaintiff"), by and through his undersigned counsel, for his complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE AND SUMMARY OF THE ACTION**

1. This is a stockholder action brought by Plaintiff against BTRS Holdings Inc. ("Billtrust" or the "Company") and the members of Billtrust's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. §240.14a-9 ("Rule 14a-9"), in connection with the Board's attempt to sell Billtrust to entities affiliated with EQT X EUR SCSp and EQT X USD SCSp (together, the "EQT Investors"), affiliates of the EQT X fund and EQT AB (the "Proposed Transaction").

2. On September 28, 2022, Billtrust entered into an Agreement and Plan of Merger with Bullseye FinCo, Inc. ("Parent") and Bullseye Merger Sub, Inc. ("Merger Sub") (the "Merger Agreement"). Parent and Merger Sub are affiliates of the EQT Investors. Pursuant to the terms of the Merger Agreement, the EQT Investors will acquire Billtrust for $9.50 in cash per share of Billtrust common stock.

3. On November 10, 2022, the Board authorized the filing of the materially incomplete and misleading Schedule 14A Definitive Proxy Statement (the "Proxy Statement") with the SEC. Specifically, the Proxy Statement, which recommends that Billtrust stockholders vote their shares in favor of the Proposed Transaction, contains materially incomplete and misleading information concerning, among other things: (i) the Company's financial projections; and (ii) the financial analyses that support the fairness opinion provided by the Company's financial advisor J.P. Morgan Securities LLC ("J.P. Morgan").

4. The failure to adequately disclose such material information constitutes a violation of Sections 14(a) and 20(a) of the Exchange Act as Billtrust stockholders need such information in order to make a fully informed decision in connection with the Proposed Transaction.

5. The special meeting for Billtrust stockholders to vote on the Proposed Transaction is currently scheduled for December 13, 2022. It is imperative that such Exchange Act violations are promptly cured to enable Plaintiff and Billtrust's other shareholders to make an informed decision whether to vote their shares in favor of the Proposed Transaction. Therefore, Plaintiff seeks to enjoin the stockholder vote unless and until such Exchange Act violations are cured.

**JURISDICTION AND VENUE**

6. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to

Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

7. Personal jurisdiction exists over the defendants because each defendant either conducts business in or maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because defendants are found or are inhabitants or transact business in this District. Billtrust's common stock trades on the Nasdaq Global Select Market, which is headquartered in this District, rendering venue in this District appropriate.

**THE PARTIES**

9. Plaintiff is, and has been at all relevant times, the owner of shares of Billtrust common stock.

10. Defendant Billtrust is a Delaware corporation, with its principal executive offices located at 1009 Lenox Drive, Suite 101, Lawrenceville, New Jersey 08648. Billtrust's shares trade on the Nasdaq Global Select Market under the ticker symbol "BTRS."

11. Defendant Flint Lane has been Chairman of the Board, Chief Executive Officer and a director of the Company at all relevant times.

12. Defendant Robert Farrell has been a director of the Company at all relevant times.

13. Defendant Matthew Harris has been a director of the Company at all relevant times.

14. Defendant Clare Hart has been a director of the Company at all relevant times.

15. Defendant Lawrence Irving has been a director of the Company at all relevant times.

16. Defendant John Murray has been a director of the Company at all relevant times.

17. Defendant Juli Spottiswood has been a director of the Company at all relevant times.

18. Defendants identified in paragraphs 11-17 are collectively referred to herein as the "Board" or the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

**Background of the Company**

19. Founded in 2001, Billtrust provides cloud-based software and integrated payment processing solutions that automates business-to-business ("B2B") commerce worldwide. The Company operates in two segments: Print, and Software and Payments. The Print segment is primarily responsible for printing customer invoices and optimizing the amount of time and costs associated with billing customers via mail. The Software and Payments segment primarily operates using software and cloud based services, optimizes electronic invoice presentment, electronic payments, credit decisioning, collections automation, cash application and deduction management, and e-commerce of B2B customers. Billtrust offers solutions that span credit decisioning and monitoring, online ordering, invoicing, cash application, and collections.

**The Proposed Transaction**

20. On September 28, 2022, Billtrust announced that it had entered into the Proposed Transaction, stating, in relevant part:

> LAWRENCEVILLE, N.J.--(BUSINESS WIRE)--BTRS Holdings Inc. ("Billtrust" or "the Company") (NASDAQ: BTRS), a B2B accounts receivable automation and integrated payments leader, today announced that it has entered into a definitive agreement to be acquired by EQT X fund ("EQT Private Equity"), part of EQT, a leading global investment organization, in an all-cash transaction valuing Billtrust's equity at approximately $1.7 billion.

Under the terms of the agreement, Billtrust shareholders will receive $9.50 per share in cash upon the closing of the transaction. The price per share represents more than a 64 percent premium above the closing share price of $5.77 on September 27, 2022, and more than a 76 percent premium above the trailing 90-day volume weighted average stock price for the period ended September 27, 2022.

"This transaction marks the beginning of an exciting new chapter for Billtrust, our customers and employees while providing shareholders an immediate and substantial cash value with a compelling premium," said Flint Lane, Billtrust Founder and CEO. "We believe B2B payments and accounts receivable continue to be ripe for massive disruption and innovation, and our partnership with EQT will provide us with greater resources and flexibility to build on our leadership position."

Since its founding in 2001, Billtrust has maximized its customers' operational efficiency across the order-to-cash spectrum with a flexible and integrated cloud-based solution. Billtrust accelerates cash flow by automating complex and historically manual processes around credit decisioning and monitoring, online ordering, invoicing, payments and remittance capture, cash application and collections.

Arvindh Kumar, Partner and Co-Head of EQT's Global Technology Sector Team, said: "We look forward to partnering with Billtrust in its journey to help customers digitize and streamline their finance operations. The Billtrust platform features modern solutions, a compelling value proposition, and, like EQT, a commitment to innovation and transformation in the digital era. Additionally, the Company operates at the intersection of software, fintech, and payments—sectors in which EQT has deep familiarity and a track record of success. With proprietary end-to-end solutions that generate value for all stakeholders and across economic cycles, Billtrust is poised to advance its leading offering in the underpenetrated accounts receivable automation space."

**Transaction Details**

The transaction, which was approved by the Billtrust Board of Directors, is expected to close in the first quarter of 2023, subject to customary closing conditions, including approval by Billtrust shareholders and receipt of applicable regulatory approval.

Upon completion of the transaction, Billtrust's shares will no longer trade on the NASDAQ, and Billtrust will become a private company.

**Advisors**

J.P. Morgan Securities LLC is serving as exclusive financial advisor to Billtrust, and Davis Polk & Wardwell LLP is acting as legal counsel to Billtrust.

> Evercore is serving as financial advisor to EQT, and Weil, Gotshal & Manges LLP is acting as legal counsel to EQT.

**<u>The Materially Incomplete and Misleading Proxy Statement</u>**

21. On November 10, 2022, the Board caused to be filed a materially incomplete and misleading Proxy Statement with the SEC. The Proxy Statement, which recommends that Billtrust stockholders vote their shares in favor of the Proposed Transaction, fails to disclose material information to Company stockholders, or provides them with materially misleading information, concerning: (i) the Company's financial projections; and (ii) the financial analyses that support the fairness opinion provided by the Company's financial advisor J.P. Morgan.

*<u>Material Misrepresentations and/or Omissions Concerning Financial Projections for Billtrust</u>*

22. The Proxy Statement fails to disclose material information concerning the financial projections for the Company.

23. For example, the Proxy Statement fails to disclose Billtrust management's projected unlevered free cash flows for years 2028 through 2031 utilized by J.P. Morgan in its *Discounted Cash Flow Analysis*. *Compare* Proxy Statement at 46 ("[t]he unlevered free cash flows that Billtrust is expected to generate from June 30, 2022 through December 31, 2031 were provided to J.P. Morgan in the projections prepared by the management of Billtrust"), *with id.* at 49 (disclosing Billtrust management's projected unlevered free cash flows for fiscal years 2022 through 2027).

24. The Proxy Statement further fails to disclose the line items underlying the Company's projected: (i) Adjusted Gross Profit; (ii) EBIT; and (iii) Unlevered Free Cash Flow.

*Material Misrepresentations and/or Omissions Concerning J.P. Morgan's Financial Analyses*

25. The Proxy Statement fails to disclose material information concerning J.P. Morgan's financial analyses.

26. With respect to J.P. Morgan's *Discounted Cash Flow Analysis*, in addition to the unlevered free cash flows for years 2028 through 2031, the Proxy Statement fails to disclose a quantification of: (i) the Company's terminal year unlevered free cash flow; (ii) the Company's terminal values; (iii) the inputs and assumptions underlying the discount rates ranging from 13.0% to 14.0%; and (iv) tax credits expected by Billtrust management to be utilized by Billtrust from June 30, 2022 through December 31, 2029.

27. With respect to J.P. Morgan's *Publicly Trading Multiples* analysis, the individual financial metrics for each of the selected companies analyzed by J.P. Morgan.

28. With respect to J.P. Morgan's *Analysts Price Targets* analysis, the Proxy Statement fails to disclose: (i) the individual price targets observed; and (ii) the sources thereof.

29. In sum, the omission of the above-referenced information renders statements in the "Projected Financial Information" and "Opinion of Billtrust's Financial Advisor" sections of the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the stockholder vote, Plaintiff and the other stockholders of Billtrust will be unable to make a sufficiently informed decision in connection with the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

## COUNT I

**Claims for Violation of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and Billtrust**

30. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

31. The Individual Defendants disseminated the false and misleading Proxy Statement, which contained statements that, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9. Billtrust is liable as the issuer of these statements.

32. The Proxy Statement was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy Statement.

33. The Individual Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

34. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction. In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy Statement and in other information reasonably available to stockholders.

35. The Proxy Statement is an essential link in causing Plaintiff and the Company's stockholders to approve the Proposed Transaction.

36. By reason of the foregoing, defendants violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

37. Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm.

## COUNT II

### Claims for Violation of Section 20(a) of the Exchange Act Against the Individual Defendants

38. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

39. The Individual Defendants acted as controlling persons of Billtrust within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Billtrust and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading.

40. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

41. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Proxy Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in the making of the Proxy Statement.

42. By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the Exchange Act.

43. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the Exchange Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, Plaintiff is threatened with irreparable harm.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of Billtrust, and against defendants, as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction, including the stockholder vote on the Proposed Transaction, unless and until defendants disclose the material information identified above which has been omitted from the Proxy Statement;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Directing the Individual Defendants to file a Proxy Statement that does not contain any untrue statements of material fact;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E. Granting such other and further relief as this Court may deem just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury.

Dated: November 17, 2022

**ACOCELLI LAW, PLLC**

By *<u>/s/ Richard A. Acocelli</u>*

Richard A. Acocelli
33 Flying Point Road, Suite 131
Southampton, NY 11968
Tel: (631) 204-6187
Email: racocelli@acocellilaw.com

*Attorneys for Plaintiff*